No. 21-35228

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANITA NOELLE GREEN,

Plaintiff-Appellant

v.

MISS UNITED STATES OF AMERICA, LLC,
a Nevada limited liability corporation,
DBA United States of America Pageants,

Defendant-Appellee.

―――――――――――――――――――――――――

Appeal from the
United States District Court for the District of Oregon
Case No. 3:19-cv-02048-MO
The Honorable Michael W. Mosman, United States District Judge

―――――――――――――――――――――――――

**APPELLANT'S BRIEF REGARDING**
***EN BANC* REVIEW**

―――――――――――――――――――――――――

Shenoa Payne, OSB No. 084392
SHENOA PAYNE ATTORNEY AT LAW PC
735 SW First Ave., Ste. 300
Portland, Oregon 97204
(503) 914-2500
spayne@paynelawpdx.com

*Attorney for Plaintiff-Appellant*
*Anita Noelle Green*

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................... 1

BACKGROUND ................................................................ 2

ARGUMENT .................................................................... 9

I.    The Majority Panel's Opinion Contradicts Long-Standing
Supreme Court Precedent Requiring Constitutional Avoidance. ................. 10

II.   The Majority Failed to Treat Defendant as a Business Regulated
By the OPAA ............................................................. 11

CONCLUSION ................................................................ 15

i

# TABLE OF AUTHORITIES

## CASES

*303 Creative, LLC v. Elenis*,
  6 F.4th 1160 (10th Cir. 2021) ............................................................. 14

*Abraham v. Corizon Health, Inc.*,
  369 Or. 735, 752, 511 P.3d 1083 (2022) ........................................... 12

*Lahmann v. Grand Aerie of Fraternal Order of Eagles*,
  180 Or. App. 420, 43 P.3d 1130 (2002) ............................................ 11

*Lloyd Lions Club of Portland v. Int'l Ass'n of Lions Club*,
  81 Or. App. 151, 724 P.2d 887 (1986) ......................................... 12, 13

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
  557 U.S. 193 (2009) ........................................................................... 10

*Potter v. City of Lacey*,
  46 F.4th 787 (9th Cir. 2022) .............................................................. 10

*Schwenk v. Boy Scouts of America*,
  275 Or. 327, 551 P.2d 465 (1976) ................................................ 10, 11

*Spector Motor Serv., Inc. v. McLaughlin*,
  323 U.S. 101 (1944) ........................................................................... 10

*Vejo v. Portland Pub. Schs.*,
  204 F.Supp.3d 1149 (D. Or. 2016),
  *rev'd and remanded on other grounds*,
  737 Fed.Appx. 309 (9th Cir. 2018) (unpublished) ............................ 12

## STATUTES

Or. Rev. Stat.  659A.400(1)(a) .............................................................. 11

Or. Rev. Stat. 659A.400(2)(e) ............................................................... 12

## INTRODUCTION

Plaintiff submits this brief in response to the Court's November 22, 2022, order directing the parties to file simultaneous briefs setting forth their respective positions on whether this case should be reheard *en banc*.

Rehearing *en banc* is warranted in this matter because the majority opinion conflicts with well-settled Supreme Court precedent requiring constitutional avoidance, and the proceeding involves one or more questions of exceptional importance. The majority opinion determined that application of the Oregon Public Accommodations Act (OPAA), Or. Rev. Stat. 659A.400-406, to defendant, a private beauty pageant, to require defendant to include transgender women in its pageant, would compel defendant to speak a message with which it disagreed in violation of defendant's federal First Amendment free speech rights. The majority's opinion conflicts with well-settled Supreme Court jurisprudence that constitutional questions should be avoided if federal courts can decide issues on state statutory grounds. Reaching such broad and important constitutional questions should not be reached unnecessarily. For those reasons, this Court should reconsider the majority opinion *en banc* and exercise the proper judicial restraint and remand to the district court to determine whether the OPAA applies in the first instance.

///

1

## BACKGROUND

Defendant Miss United States of America (USOA) is a Nevada corporation that operates or manages beauty pageants throughout the United States, including a pageant in Oregon. 2-ER-74, 76. Defendant licenses state directors to produce state pageants under the supervision of its National Director, Tanice Smith. 2-ER-203. Defendant formed its business in June 2017 and started holding an annual Miss Oregon pageant in September 2018. 2-ER-80-83, 117, 123, 130. Defendant controls all aspects of its state pageants, including the Miss Oregon pageant. 1-ER-36-41; 2-ER-203; 3-ER-630-42; 4-ER-645-89.[1]

Defendant is a for-profit limited liability corporation. 2-ER-81, 117. Defendant licensed its business to conduct "general retail sales" of "program book sales" and to promote pageants. 2-ER-76-77. Defendant charges its state directors to run its state pageants, charging a base price of $2500, with $1000 for each additional division. 2-ER-213, 3-ER-630; 4-ER-645, 664. USOA also receives a royalty of $125 per contestant for each additional division. 3-ER-630; 4-ER-645, 664. Here, Oregon's state director paid USOA $6,875.00 from the 2018 Miss Oregon pageant, and $7,265.00 from the 2019 Miss Oregon pageant. 2-ER-85-86.

---

[1] The district court and the majority opinion both mistakenly focused on defendant's national pageant in Las Vegas. However, this Oregon lawsuit was focused on plaintiff's ability to participate in defendant's Miss Oregon pageant held in Springfield, Oregon – the only pageant regulated by Oregon law.

2

In addition, defendant heavily relies on its contestants to raise financial revenue and recruit new contestants. 2-ER-117-18, 124-25. Defendant requires its Oregon contestants to sell at least one full-page color advertisement for the Miss Oregon pageant book, which costs $299. 2-ER-95, 117-18, 124-25, 137. If contestants don't sell the page advertisements, they are required to personally pay defendant $299. 2-ER-118, 124. In addition, defendant incentivizes its contestants to sell additional advertisements for the program book. This is done by offsetting contestant expenses and awarding contestants who sell the most advertisements. 2-ER-118, 125, 137.

Defendant also requires its contestants to recruit new contestants. 2-ER-125. Defendant creates Facebook pages for the local titleholders to promote the pageant. Contestants are incentivized to recruit as many contestants as possible by earning $100 for every new contestant recruited to the Miss Oregon pageant. 2-ER-125. Contestants also pay defendant a $595 entry fee to participate in defendant's Miss Oregon pageant. 2-ER-94, 118, 125, 136.

The USOA Miss Oregon pageant

is designed to help women ACHIEVE their dreams and make them feel BEAUTIFUL inside and out! Our motto is to EMPOWER Women, INSPIRE others, and UPLIFT everyone! We focus on empowering women, promoting positive self-image and providing an avenue of achievement for today's modern woman. But more importantly we are an elite sisterhood that provides support and encouragement to inspire each delegate to be the best version of herself!

3

2-ER-87, 129, 142.  In order to be eligible to compete in defendant's Oregon pageants, a contestant must: (1) be a U.S. citizen, naturalized, or granted permanent residency; (2) be a resident, work or go to school in Oregon; (3) *be "a natural born female*"; and (4) have never posed nude in film or print media.  2-ER-91, 133 (emphasis added).

Plaintiff Anita Noelle Green is an openly transgender female – a person whose gender identity as female differs from the gender she was assigned at birth. Ms. Green was *assigned* the gender of male at birth – an action outside of her control. 2-ER-182.  Plaintiff came out as transgender at the age of 17 and began transitioning from the assigned gender of male to her female gender.  She began hormone therapy at the age of 18 to affirm her female gender. 2-ER-182-83.  At the age of 19, plaintiff began living fulltime as a woman.  At age 24, plaintiff had gender-affirming surgery.  Since her gender affirming surgery, plaintiff's anatomical traits have aligned with her female gender.  Plaintiff also legally has changed her assigned gender. 2-ER-183. Her birth certificate, passport, and state driver's license all correctly identify plaintiff as female. 2-ER-183, 187-89. Plaintiff is a legally recognized female who presents as stereotypically female. 2-ER-182-83, 187-89.

///

///

4

Ms. Green is an experienced pageant participant. 2-ER-183. In 2017, Ms. Green participated in the Miss Montana USA® pageant, which is part of the Miss Universe® Organization (MUO). 2-ER-183. The MUO "creates and advances opportunities for women around the world through its network of relationships across entertainment, fashion and philanthropy." 2-ER-183, 191. The MUO "encourages every woman to challenge herself, find her unique voice, and embody the organization's mission of being Confidently Beautiful." 2-ER-183, 191. Ms. Green was extremely dedicated to participating in her first pageant. 2-ER-183. She hired a pageant coach, lost 50 pounds, changed her diet and exercise, and took her pageant duties very seriously. 2-ER-183. Ms. Green participated in the Miss Montana USA® competition again in 2018. 2-ER-183.

In September 2018, Ms. Green moved to Oregon and was crowned the 2018 Miss Earth® USA Elite Oregon titleholder. 2-ER-183. The mission of Miss Earth® is "to provide a platform for America's women to be a voice for environmental responsibility, while featuring these beauties for a cause in fashion, media and leadership opportunities." 2-ER-183-84, 194. The Miss Earth® competition "is a search for the most beautiful women of the Earth to serve as role models to uphold the advocacy to preserve and restore Mother Earth." 2-ER-184, 194. In 2019, Ms. Green participated in the Miss Earth® Elite National competition in Las Vegas, Nevada. 2-ER-184, 196-198 (*Id.* ¶ 6 & Ex. E).

5

In December 2018, Ms. Smith sent Ms. Green a friend request on Facebook, which Ms. Green accepted. 2-ER-184. Ms. Green noticed that Ms. Smith was the director of the USOA pageants and messaged Ms. Smith to inquire further. 2-ER-184; 4-ER-690. Before learning that plaintiff was transgender, Ms. Smith responded that she would "be happy to give [plaintiff] more information" about defendant's program. 2-ER-62; 4-ER-690. Ms. Smith confirmed that Ms. Green was an Oregon resident and informed Ms. Green that although defendant's 2018 Oregon pageant had already occurred, Ms. Green could participate in "next year's Oregon pageant." 4-ER-690. Ms. Green then asked for defendant's rules, which Ms. Smith provided. 4-ER-690-91. Ms. Green then asked whether Ms. Smith knew Ms. Green was transgender, to which Ms. Smith responded "I did not, our rules and regulations allow same sex marriage, however this is a natural pageant. I would be happy to assist you in finding a pageant that you qualify for." 4-ER-691 (emphasis added). Ms. Green asked if defendant would be willing to change the rules, and Ms. Smith responded that "at this time we do not anticipate the rules changing." 4-ER-691.

On January 29, 2019, Ms. Green submitted an application to participate in defendant's pageant and paid the entry fee. 2-ER-185, 4-ER-692. Defendant immediately rejected plaintiff's application and refunded plaintiff's fee. 2-ER-185, 199-201.

Plaintiff filed this gender-identity discrimination action pursuant to Oregon's Public Accommodations Act (OPAA), Or. Rev. Stat. 659A.400-406, against defendant Miss United States of America, LLC, d/b/a United States of America (USOA) pageants. 4-ER-856-65. Plaintiff alleged that defendant's eligibility rule requiring contestants to be a "natural born female" unlawfully discriminated against plaintiff based on her gender identity. 4-ER-857, 860-61.

Defendant moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ P. 12(b)(6), asserting *inter alia* that application of the OPAA to defendant would violate defendant's constitutional free speech and associational rights. Def. Mtn. Dismiss, Doc No. 8 (Feb 10, 2020). Plaintiff opposed defendant's motion to dismiss. Pl. Opp'n Def. Mtn. Dismiss, *Green v. Miss United States of America, LLC*, 3:19-cv-02048-MO, Doc. No. 21 (Mar. 30, 2020). In addition to opposing the motion on the merits, plaintiff argued that discovery was necessary to oppose certain aspects of defendant's motion. Pl. Opp'n Def. Mtn. Dismiss at 8-9, Doc. No. 21 (Mar. 30, 2020); Payne Decl., Doc No. 23 (Mar. 30, 2020). The court delayed ruling on defendant's motion and determined that the court would resolve the issues at the summary judgment stage following a 90-day period of limited written discovery on the commercial nature of defendant's business. 4-ER-784-88, 790.

Following limited discovery,[2] defendant filed a motion for summary judgment, renewing its arguments that application of the OPAA to defendant would violate defendant's constitutional rights. The district court rejected defendant's free speech arguments, 1-ER-6-20, but granted defendant's motion on the grounds that application of the OPAA to defendant would violate defendant's freedom to associate under the federal constitution. 1-ER-20-32, 53-54. The Court granted defendant's motion for summary judgment. 1-ER-33, 54.

The majority panel affirmed the district court, but on a different basis. The majority held that forcing Ms. Green to participate in defendant's pageant would compel defendant to speak a message with which it disagreed – that Ms. Green is a woman – and therefore would violate defendant's free speech rights. Majority Panel Op., *Green v. Miss United States of America*, Case No. 21-35228, Dkt No. 84-1 (Nov. 2, 2022). Judge Graber dissented, reasoning that the majority should not have reached the constitutional issue at all and should have determined whether the OPAA applied to defendant in the first instance. Dissenting Op. (Graber, J.), Dkt No. 84-1.

---

[2] Plaintiff was permitted only written discovery on the nature of defendant's commercial activities – she was not permitted any depositions of defendant's employees or agents, including defendant's national director or the Oregon pageant director, and she was not permitted any discovery at all on issues outside of defendant's commercial activities. Payne Decl., Doc No. 23 (Mar. 30, 2020); 4-ER-784-88, 790.

## ARGUMENT

Rehearing is warranted for the reasons outlined in Judge Graber's dissenting opinion. As explained below, the majority panel opinion contradicts well-settled Supreme Court and Ninth Circuit authority requiring constitutional avoidance by federal courts when matters can be decided on state statutory grounds. Furthermore, this case presents an issue of exceptional importance as it involves the conflict between Oregon's enforcement of its nondiscrimination laws and the First Amendment. Should this opinion stand, vulnerable LGBTQ+ individuals will lose important anti-discrimination protections.

As Judge Graber recognized in her dissent, the majority need not have reached such an important constitutional question at all. *First*, the majority ignored the constitutional avoidance doctrine and unnecessarily reached constitutional issues without first determining, in an *as applied* constitutional challenge, whether the OPAA actually applied to defendant in the first instance. *Second*, the court's exercise had real consequences, because although the majority assumed that the OPAA would apply to defendant, it did not treat the defendant as being regulated by the OPAA. The OPAA only regulates business and commercial entities that are *so unselective* as to be open to the public. But the majority opinion repeatedly compared defendant to *Hamilton* and other artistic entities that engage in *highly selective processes*. Thus, at its very core, the majority's opinion does not

9

even apply to businesses regulated by the OPAA and is disconnected entirely from application of the OPAA. For those reasons, this Court should reconsider the majority's opinion *en banc*.

### I.  The Majority Panel's Opinion Contradicts Long-Standing Supreme Court Precedent Requiring Constitutional Avoidance.

The Supreme Court long has recognized that doctrine of constitutional avoidance. *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."); *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (constitutional issues should be avoided if a statutory issue resolves the case). This is particularly true when there is an alternative state-law ground available. *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022).

Defendant raised only an *as-applied* constitutional challenge. Yet the majority panel opinion improperly relies on the overbreadth doctrine to invoke an exception to the case and controversy requirements. Majority Panel Op. at 52-53 (Dkt No. 84-1). If the OPAA does not apply to the Pageant, there is no actual case or controversy, and Oregon Courts have been clear that the constitutional issues raised by defendant are not ripe until it is determined that the OPAA applies to the defendant. *See Schwenk v. Boy Scouts of America*, 275 Or. 327, 336, 336 n.5, 551

10

P.2d 465 (1976) (determining that BSA was not a place of public accommodation under the OPAA and in turn determined that it was not necessary for the court to consider the additional constitutional arguments raised by the defendant); *Lahmann v. Grand Aerie of Fraternal Ord. of Eagles*, 180 Or. App. 420, 43 P.3d 1130 (2002) (it was premature to reach the constitutional issues until the historical facts that underlie whether the OPAA applied to the defendant were resolved at trial, both because it was improper to reach constitutional issues that could potentially be resolved on statutory grounds, but also because the development of additional facts could bear on the constitutional issue). For all the reasons outlined in Judge Graber's dissent, this Court should reconsider the majority's opinion *en banc*.

## II. The Majority Failed to Treat Defendant as a Business Regulated by the OPAA.

Here, the majority panel assumed the OPAA applied to defendant, but failed to properly treat the defendant as an organization *regulated by the OPAA*.

The OPAA applies to

[a]ny place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise.

Or. Rev. Stat. 659A.400(1)(a). In *Schwenk*, the Oregon Supreme Court interpreted that statute as applying only to business and commercial enterprises which offer goods or services to the public. 275 Or. at 334. Recently, the Oregon Supreme Court determined that the OPAA applies even if services are not offered on an

11

"indiscriminate basis." *Abraham v. Corizon Health, Inc.*, 369 Or 735, 752, 511 P.3d 1083 (2022). Thus, some restrictions in services, such as geographic qualifications or offering services to a subset of a population does not exclude a business from regulation by the OPAA. *Id.*

However, the OPAA expressly excludes "an institution, bona fide club or place of accommodation that is in its nature distinctly private." Or. Rev. Stat. 659A.400(2)(e). An organization with eligibility criteria is not "distinctly private" if, despite its discriminatory eligibility criteria, *it is so unselective as to be said to be open to the public*. *Lloyd Lions Club of Portland v. Int'l Ass'n of Lions Club*, 81 Or. App. 151, 157, 724 P.2d 887 (1986). Thus, although the OPAA applies if services are offered only to a subset of the general public, highly selective organizations are ultimately distinctly private organizations not subject to the OPAA. *See, e.g.*, *Vejo v. Portland Pub. Schs.*, 204 F.Supp.3d 1149, 1168 (D. Or. 2016) (concluding that the OPAA did not apply to private college because of its selectivity), *rev'd and remanded on other grounds*, 737 Fed.Appx. 309 (9th Cir. 2018) (unpublished).

Here, plaintiff presented evidence that created a question of fact for a factfinder that defendant was not highly selective in recruiting contestants for its Oregon pageant. Plaintiff presented evidence that the Pageant heavily recruited Oregon contestants in order to grow its pageant. 2-ER-116-118, 124-125. The

12

Pageant did not conduct an interview process, audition, video submission, or other application process that could be considered "selective." 2-ER-123. The Pageant was not selective for the very reason that the more Oregon contestants it has, the more royalties and profit defendant earns. 3-ER-630; 4-ER-645, 664. And although the Pageant has some age and marital *categories*, such as permissible under *Abraham*, its Oregon competition is virtually open to all female Oregonians who are not transgender. *See Lloyd Lions Club of Portland*, 81 Or. App. at 157.

However, the majority ignored those facts in assuming defendant was subject to the OPAA. If the majority was assuming the OPAA applied to defendant, then it also had to assume that defendant was not a highly selective organization. But the majority did not do so – instead comparing defendant to *Hamilton* and other organizations that engage in *intensely selective processes* that cannot be said to be open to the public as contemplated by the OPAA. In failing to treat defendant as the type of unselective business that the OPAA regulates, the majority's opinion created a further advisory opinion untethered to any application of the OPAA at all. *See* dissent at 10-11 (noting that Oregon's interests in narrowly tailoring the statute are inherently bound up in which individuals and organizations are actually regulated by the statute).

///

///

13

Perhaps defendant does engage in intensely selective processes like the creators of *Hamilton*. But there was no fact-finding on that issue, and a factfinder should determine whether the OPAA applies in the first instance. And, as the Oregon Supreme Court recognized recently, it is a highly factual question as to whether the OPAA applies. Some restrictions do not take the defendant out of the regulation of the OPAA, but intensely selective processes likely would. Discovery on those issues and determination by a factfinder are most appropriate.[3]

Certainly, however, the majority could not have it both ways – it could not both assume that the OPAA applied to defendant to reach the constitutional issue, but then also treat defendant as an intensely selective organization similar to *Hamilton* that would not be regulated by the OPAA at all. Its error created an opinion that is advisory in every way. This court should reconsider the majority panel's opinion *en banc*.

///

---

[3]    The United States Supreme Court recently heard oral argument in *303 Creative, LLC v. Elenis*, No. 21-476, where it considered whether enforcement of Colorado's public accommodation law to a website designer would violate the website designer's freedom of speech. There was no question in that case whether the website designer's business was commercial in nature or whether it served the general public and was subject to Colorado's public accommodation laws. *See 303 Creative, LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021). In fact, the Tenth Circuit believed that Colorado's regulation of the commercial marketplace provided Colorado with a compelling state interest that may have absent when regulating non-commercial activity. *Id.* at 1179.

14

## CONCLUSION

Plaintiff respectfully requests that this Court grant *en banc* review and reconsider the majority panel's decision because it is an advisory opinion and contradicts well-settled principles of constitutional avoidance and judicial restraint.

DATED this 27th day of December, 2022.

SHENOA PAYNE ATTORNEY AT LAW PC

/s/ *Shenoa L. Payne*
Shenoa L. Payne, Oregon State Bar No. 084392

*Attorney for Plaintiff-Appellant*
*Anita Noelle Green*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**:  21-35228

I am the attorney or self-represented party.

**This brief contains _____ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [  ] it is a joint brief submitted by separately represented parties;
   [  ] a party or parties are filing a single brief in response to multiple briefs; or
   [  ] a party or parties are filing a single brief in response to a longer joint brief.

[X] complies with the length limit designated by court order dated November 22, 2022.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


/s/ *Shenoa L. Payne* _____
Shenoa L. Payne

*Attorney for Plaintiff-Appellant*
*Anita Noelle Green*

## <u>CERTIFICATE OF SERVICE FOR ELECTRONIC FILING</u>

I hereby certify that I electronically filed the foregoing **Appellant's Brief Regarding *En Banc* Review** on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing System.

**Service on Participants Who are <u>NOT</u> Registered for Electronic Filing:**

None

/s/ *Shenoa L. Payne*
Shenoa L. Payne

*Attorney for Plaintiff-Appellant*
*Anita Noelle Green*